BUTLER v. WALSH.

(Supreme Court, Appellate Division, Second Department. March 6, 1900.)

DEFAULT OF TRUSTEE—ASSIGNMENT OF TRUST PROPERTY.

Where a trustee of a certain fund, being also attorney in fact for defendant, assigned a mortgage belonging to the trust fund to the defendant, but concealed the assignment from the cestui que trust, and paid the interest thereon to both parties, on action by the cestui que trust for possession of the mortgage it was error to render a judgment for him on the grounds that the assignment was not an actual investment of defendant's funds, but merely a transaction to cover an embezzlement of such funds, when there was a stipulation of facts treating the assignment as an investment for defendant.

Appeal from special term, Kings county.

62 N.Y.S.—58

Action by Prescott Hall Butler, receiver of a trust estate created under the will of Charlotte Harries, deceased, against Correa Moylan Walsh. From a judgment for plaintiff, defendant appeals. Reversed.

Argued before GOODRICH, P. J., and BARTLETT, HATCH, and WOODWARD, JJ.

Gibson Putzel (Charles Albert Perkins, on the brief), for appellant.

Roswell W. Keene, for respondent.

WILLARD BARTLETT, J. This is a suit to recover possession of a bond and mortgage for $3,000, which may conveniently be described as the "Dession Bond and Mortgage." The litigation grows out of the misconduct of one William A. Cook, an absconding defaulter, who was a trustee under the will of Charlotte E. Harries, and at the same time the attorney in fact for the defendant, Correa Moylan Walsh, for the purpose of investing the said defendant's moneys. In February, 1890, Cook, as trustee, invested $3,000 of the moneys of the trust estate in the Dession mortgage. In May, 1890, he executed a written assignment of the bond and mortgage to the defendant, who was then in Europe, and knew nothing of the transaction. Upon the defendant's return to this country in the summer of 1890, Cook delivered to him the bond and mortgage, and the assignment thereof. The defendant returned all the instruments to Cook, who kept the same until he absconded, in February, 1898, when the defendant found the papers in Cook's office, and procured the assignment to be recorded. From the time of the assignment, in May, 1890, Cook paid to the defendant, from time to time, moneys which he represented to be the interest on the mortgage. During the same period, in his accounts with the beneficiaries of the Harries trust estate, he charged himself, as trustee, with the interest on the same mortgage. Thus he represented himself to his cestuis que trustent as holding the mortgage for their benefit as their trustee, and to the defendant as holding the mortgage for his benefit as the defendant's attorney in fact. Upon Cook's default and flight, the question arose whether this mortgage belonged to the Harries estate or to Mr. Walsh, and this action was instituted for the purpose of settling that question. Its correct determination seems to depend upon what was the actual conduct of Cook in the matter. If he had in his hands, as attorney in fact for Mr. Walsh, $3,000 of Mr. Walsh's money for investment, and if he appropriated that money to his own use, and transferred the Dession bond and mortgage to Mr. Walsh simply in order to conceal his embezzlement, the assignment was without consideration, and fraudulent, and did not operate to convey any title to the defendant. If, on the other hand, before he had formed any idea of wrongdoing, and without any fraudulent intent Cook actually invested Mr. Walsh's money in the purchase of the Dession bond and mortgage, taking the money received therefor into his custody as trustee, with the honest purpose of thereafter investing it for the benefit of the trust

estate, and if the embezzlement did not occur until after he had done all this, the transfer of the mortgage to Mr. Walsh would seem to have been valid and effectual. This was the view taken by the learned trial judge, who held that Cook, as trustee, had power to transfer the bond and mortgage, for value, to a purchaser in good faith; and also that Cook, as the attorney in fact of the defendant, had power to invest the defendant's $3,000 for his principal. "If Cook made the assignment in good faith," said the learned justice at special term, "and actually transferred the purchase price from the fund of his principal to the fund of the trust estate without intending to steal the money, but afterwards became a defaulter to the estate, then the transaction should be upheld." The court below, however, reached the conclusion that this was not the true character of the transaction, but that Cook assigned the bond and mortgage to the defendant, not for the purpose of making an investment of the funds of his principal, but for the purpose of stealing the funds. This conclusion, if supported by the evidence, required the rendition of the judgment which was directed for the plaintiff. We should deem it amply sustained by the proof in this record if we were at liberty to ignore a stipulation entered into between the attorneys for the respective parties upon the trial, agreeing upon certain facts as evidence in the action. One of the provisions contained in that stipulation is as follows:

"The investment by Cook, as attorney for defendant, of $3,000 of defendant's capital in the Dession bond and mortgage in suit, was made by Cook, as such attorney, without consultation with defendant, and such investment was not known to defendant until his return to this country in the summer of 1890, as above named."

It seems to us that the language above quoted necessarily implies that Cook actually invested, in the purchase of the Dession bond and mortgage, $3,000 of the defendant's money. If he did so, that money became the property of the Harries estate, and furnished a good and sufficient consideration for the assignment of the bond and mortgage to the defendant. The use of the term "investment" is inconsistent with the idea of a merely colorable transfer designed to conceal Cook's misappropriation of Mr. Walsh's moneys, and to make the loss fall upon the trust estate, rather than upon Mr. Walsh. In short, if it can be held that Cook in any true sense invested $3,000 of the defendant's capital in the Dession bond and mortgage, we think the defendant became the owner of that bond and mortgage, and is entitled to retain the same as against the representatives of the Harries estate. These views compel a reversal of the judgment.

There is an exception to the ninth finding of fact made by the learned trial judge, to the effect that "Cook did not invest any money of the defendant in the purchase of the bond and mortgage, and the assignment was without consideration." This finding is in direct contradiction to that portion of the stipulation which we have already quoted, and in which the parties assume it to be a fact that Cook, as the defendant's attorney, did invest $3,000 of his capital in the bond and mortgage in suit. As we have already intimated,

a recovery in behalf of the plaintiff might be capable of support in the absence of this stipulation, but with it in the record a judgment in his favor cannot stand.

The judgment should be reversed, and a new trial granted; costs to abide the final award of costs. All concur.